IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TAMMY STROTHER                                                                    PLAINTIFF

vs.                                          Civil No. 6:16-cv-06025

NANCY BERRYHILL                                                                   DEFENDANT
Acting Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Tammy Strother ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social

Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of

the Commissioner of the Social Security Administration ("SSA") denying her application for

Disability Insurance Benefits ("DIB") under Title II of the Act.  The parties have consented to the

jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including

conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment

proceedings.  ECF No. 7.[1]  Pursuant to this authority, the Court issues this memorandum opinion

and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff's application for DIB was filed on April 8, 2013. (Tr. 13, 151-152). Plaintiff alleged

she was disabled due to scoliosis, arthritis, her right arm and shoulder, back and neck pain, hip

socket swelling, vision problems, and nerve damage.  (Tr. 166).  Plaintiff alleged an onset date of

September 3, 2011.   (Tr. 13,151).   This application was denied initially and again upon

---

[1] The docket numbers for this case are referenced by the designation "ECF. No.___"  The transcript pages
for this case are referenced by the designation "Tr."

reconsideration.  (Tr. 85-97, 100-101).  Thereafter, Plaintiff requested an administrative hearing on her application and this hearing request was granted.  (Tr. 102).

Plaintiff's administrative hearing was held on July 30, 2014.  (Tr. 32-69).  Plaintiff was present and was represented by counsel, Shannon Muse Carroll, at this hearing.  *Id.*  Plaintiff and Vocational Expert ("VE") Mack Welch testified at this hearing.  *Id.*  At the time of this hearing, Plaintiff was forty-three (43) years old and had a ninth grade education.  (Tr. 36-38).

On November 5, 2014, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB.  (Tr. 13-27).  In this decision, the ALJ determined the Plaintiff met the insured status requirements of the Act through December 31, 2015.  (Tr. 15, Finding 1).  The ALJ also determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 3, 2011, her alleged onset date.  (Tr. 15, Finding 2).

The ALJ determined Plaintiff had the severe impairments of fibromyalgia, osteoarthritic, back and neck pain, degenerative disc disease, mild scoliosis, and right shoulder pain.  (Tr. 15, Finding 3).  The ALJ then determined Plaintiff's impairments did not meet or medically equal the requirements of any of the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings").  (Tr. 16, Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 16-24).  First, the ALJ indicated he evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible.  *Id.*  Second, the ALJ determined Plaintiff retained the RFC for a limited range of light work and stated as follows:

> The claimant has mild to moderate pain. She has certain restrictions related to this pain and the diagnosis of fibromyalgia, osteoarthritic, and back and neck pain. She can occasionally climb, stoop, crouch, kneel, and/or crawl. The pain has been basically treated with over-the-counter medication, and more recently (in the last two

months) with Tramadol. Exertionally, the claimant has the residual functional capacity to perform light work, with the ability to lift-carry and push-pull no more than 20 pounds occasionally and 10 pounds more frequency, the ability to stand and/or walk up to 6 to 8 hours (1- 2 without interruption) in an 8-hour workday, and the ability to stand and/or walk up to 6 hours in an 8-hour workday (1-2 without interruption) as defined in 20 CFR 404.1567(b). The problem is with overhead reaching with the right dominant shoulder and arm. It is very limited; less than one-third of the day. There are no restrictions in the left. Reaching and handling is limited to frequent as to constant. Because of that limitation, the claimant should avoid operating moving machinery, such as a bus, taxicab, car or forklift. She should also avoid performing assembly type work that requires constant repetitive type of reaching and grasping.

Mentally, the only issue is an adjustment disorder. However, because of her past relevant work, which has been at the low skilled level or unskilled level, the claimant is restricted to unskilled activities as she has performed in the past. These are unskilled rote activities, where she can understand, carry out and remember concrete instructions and in which contact with supervision, co-workers and the public is superficial. Thus, the claimant would have the ability to briefly meet-greet others, make change, and give simple instructions and directions.

The law requires that the claimant under the age of 50 be considered for sedentary work. Therefore, in alternative, the undersigned has concluded that the claimant also has the residual functional capacity to lift only 10 pounds or less and perform work at the sitting position with a sit/stand option, standing at an hour or sitting at an hour at a time. All other restrictions are the same as listed above.

(Tr. 16-17, Finding 5).

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 24, Finding 6). The ALJ found Plaintiff unable to perform his PRW. *Id.* The ALJ, however, also determined there was other work existing in significant numbers in the national economy Plaintiff could perform. (Tr. 25, Finding 10). The ALJ based this determination upon the testimony of the VE. *Id.* Specifically, the VE testified that given all Plaintiff's vocational factors, a hypothetical individual would be able to perform the requirements of a representative occupation such as office helper with 1,200 such jobs in Arkansas and 70,000 such jobs in the nation, and cashier with 1,100 such jobs in Arkansas and 240,000 such jobs in the nation. In the alternative, scale operator with 500 such jobs in Arkansas

and 28,000 such jobs in the nation and ceramic tile inspector with 500 such jobs in Arkansas and

30,000 such jobs in the nation.  *Id.*  Based upon this finding, the ALJ determined Plaintiff had not

been under a disability as defined by the Act from September 3, 2011, through the date of the

decision.  (Tr. 27, Finding 11).

Thereafter, Plaintiff requested the Appeals Council review the ALJ's decision.  (Tr. 7-9).  *See*

20 C.F.R. § 404.968.  The Appeals Council declined to review this unfavorable decision.  (Tr. 1-6).

On March 14, 2016, Plaintiff filed the present appeal.  ECF No. 1.  The Parties consented to the

jurisdiction of this Court on March 15, 2016.  ECF No. 7.  Both Parties have filed appeal briefs.  ECF

Nos. 11, 12.  This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's

findings are supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. § 405(g)

(2006);  *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than

a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to

support the Commissioner's decision.  *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the

Court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome or because the Court would have decided the case differently.  *See*

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the

findings of the ALJ, the decision of the ALJ must be affirmed.  *See Young v. Apfel,* 221 F.3d 1065,

1068 (8th Cir. 2000).

`It is well established that a claimant for Social Security disability benefits has the burden of

proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the ALJ erred: (1) by failing to find Plaintiff met a Listing, and (2) in his RFC determination. ECF No. 11, Pgs. 3-17. In response, the Defendant

argues the ALJ did not err in any of his findings.  ECF No. 12.

### A. Listings

The ALJ must determine whether Plaintiff has a severe impairment that significantly limits the physical or mental ability to perform basic work activities.  A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1521 and 416.921.

The ALJ found Plaintiff did suffer from impairments considered to be severe within the meaning of the Social Security regulations.  These impairments included fibromyalgia, osteoarthritic, back and neck pain, degenerative disc disease, mild scoliosis, and right shoulder pain.  (Tr. 15, Finding 3).  However, there was no substantial evidence in the record showing Plaintiff's condition was severe enough to meet or equal that of a listed impairment as set forth in the Listing of Impairments.  *See* 20 C.F.R. pt. 404, subpt. P, app.1.  Plaintiff has the burden of establishing that her impairment(s) meet or equal an impairment set out in the Listing of Impairments.  *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990).  Plaintiff has not met this burden.

Plaintiff argues she meets a Listing under Section 1.02 for major dysfunction of a joint and Listing 1.04 for disorders of the spine.  ECF No. 11, Pgs. 3-11.  Defendant argues Plaintiff has failed to establish she meets theses Listings.  ECF No. 12.

Impairments found under Listing 1.02 for major joint dysfunction requires evidence of:

> major dysfunction of a joint characterized by gross anatomical deformity (e.g., subluxation, contracture, bony, or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint, with involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b or involvement of one major peripheral joint

> in each upper extremity (i.e., shoulder, elbow, or wrist-hand),
> resulting in inability to perform fine and gross movements effectively,
> as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

An "inability to ambulate effectively" is an extreme limitation of the ability to walk, i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1). To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, and they must be able to travel without companion assistance to and from a place of employment or school. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(2). Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Id*.

In this matter, Plaintiff has failed to establish she is unable to ambulate effectively. Plaintiff has no evidence she has to use a walker, two crutches, or two canes to walk, or that a physician prescribed these items. Further, Plaintiff presented no diagnostic medical evidence showing she has a major dysfunction of a joint characterized by gross anatomical deformity, and findings on medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints.

An "inability to perform fine and gross movements effectively" means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the

individual's ability to independently initiate, sustain, or complete activities.  To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.  Examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2c.

There is no credible evidence showing Plaintiff is prohibited from ambulating effectively with a major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively.

To meet a listing under 1.04 for disorders of the spine, requires evidence of:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

Listing 1.04 requires medical evidence of nerve root compression, sensory or reflex loss, and a positive straight-leg raising test. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). Plaintiff has failed to provide medical evidence that documents the criteria for the listed impairment are met. Additionally, as demonstrated in the section for Listing 1.02, Plaintiff's ability to ambulate effectively was unimpaired.

Whether Plaintiff meets a listed impairment is a medical determination and must be established by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. §§ 404.1525(c), 404.1526(b), 416.925(c), 416.926(b). Plaintiff has not met this burden. I find substantial evidence supports the ALJ's determination that Plaintiff did not have an impairment or combination of impairments equal to one listed in 20 C.F.R. pt. 404, subpt. P, app.1.

### B. RFC

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace. *See* *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004). The ALJ should consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)). The Plaintiff has the burden of producing documents and evidence to support his or her claimed RFC. *See Cox*, 160 F.3d at1206;  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports the RFC determination. *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir.

2001).    Furthermore, this Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole.  *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

In this matter, the ALJ determined Plaintiff retained the RFC for a limited range of light work. (Tr. 16-17, Finding 5).  Plaintiff argues the ALJ erred in this RFC determination.  ECF No. 11, Pgs. 11-17.  However, substantial evidence supports the ALJ's RFC determination.

In reviewing Plaintiff's medical evidence of record, Plaintiff injured her right shoulder and arm at work in August 2010.  (Tr. 239).  On November 28, 2011, Dr. Charles Pearce performed an examination under anesthesia, manipulation under anesthesia, adhesiolysis of anterior glenohumerol joint, subacromial decompression, and a postoperative placement of interscalene block done by anesthesia for postoperative pain control.  (Tr. 245-246).  Dr. Pearce reported a postoperative diagnosis of right shoulder adhesive capsulitis, impingement, and a normal rotator cuff.  (Tr. 245). As of April 5, 2012, Dr. Pearce indicated Plaintiff had reached maximum medical improvement and could return to regular activities.  (Tr. 258).

On June 20, 2013, Dr. Clifton Evans performed a consultative examination on Plaintiff.  (Tr. 226-230).  Dr. Evans indicated Plaintiff  had undergone right shoulder surgery for bone spurs, and was not taking any medications.  (Tr. 226).  Plaintiff's forward elevation range of motion of her right shoulder was 100 degrees.  Normal range of motion is 150 degrees.  (Tr. 228).  Plaintiff's right upper arm was 70% weaker than her left, and her straight-leg rasing testing was negative.  (Tr. 229). Plaintiff could hold a pen and write; touch fingertips to palm; oppose thumb to fingers; and pick up a coin; could not walk on her heels and toes, or squat and arise from a squatting position; could stand/walk without assistive devices; and grip strength was 90% on the right, and 100% on the left. *Id.*

In determining the RFC, the ALJ also relied on medical consultants Dr. Judith Forte and Dr. Rita Allbright who each reviewed the evidence of record in June and August 2013, respectively and determined the medical evidence supported a finding that Plaintiff retained the capacity to perform light work with an additional limitation on performing overhead reaching with the right upper extremity.  (Tr. 77-81, 90-94).

As shown by the above medical evidence, substantial evidence supports the ALJ's RFC determination.  Plaintiff has the burden of establishing her claimed RFC.  *See Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart,* 390 F.3d 584, 590 (8th Cir. 2004)). Because Plaintiff has not met her burden in this case and because the ALJ's RFC determination is supported by sufficient medical evidence, this Court finds the ALJ's RFC determination should be affirmed.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **16th day of February 2017.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE